## BOARDMAN *vs.* PAIGE.

The rule of law seems to be, that where joint promisers, or co-sureties, have received equal benefits, or been relieved from common burthens, each is entitled to recover over against the other, contribution for the excess by him paid beyond his due proportion, or equal share.

Where an action is commenced by the holder of a note against all the co-signers, and judgment is recovered against one only, upon payment of the damages and costs of the judgment, the party against whom the judgment is recovered is not entitled to contribution from the other co-signers in respect of the costs—the same not being a burthen common to all the co-signers of the note.

The discharge of the direct liability of one co-signer to the holder of a note, will not avail him as a discharge from his liability for contribution to the other co-signers, unless the discharge be of a character to discharge and release the others also, and one of which they might avail themselves as a discharge, whether the discharge from the direct liability be the result of the contract of the holder of the note, or of the operation of the statute of limitations.

And, generally, it would seem that, so long as the direct liability of any of the co-signers of a note to the holder or promisee shall continue, by virtue of the original contract, and not depending upon any new promise not contemplated by the original contract, the liability of the other co-signers for contribution will continue also, although they may be discharged from direct liability to the action of the holder or promisee.

An exception to that general rule may be found to exist, depending upon the provisions of special statutes, as in the case of acts of bankruptcy or insolvency, in which, at the same time that it is provided that the direct liability of the bankrupt or insolvent to the promisee shall be discharged, provision is also made for the limitation of the remedy of sureties, or co-promisers, to the assets in the hands of the assignees.

Where there are several co-signers of a note, and one pays the whole, but before payment some of the co-signers remove from the state, such removal is to be considered as having the same effect as if they were proved insolvent ; and accordingly the party paying is not bound to seek his remedy against those co-signers in the foreign jurisdiction, but may recover by way of contribution of each of those remaining within the state, an equal share of the whole sum paid.

The clerk of a court is competent to certify copies of the records properly made in his office, and of all original papers of which he may have the legal custody. He is a certifying officer to that extent, but no further. Beyond that, his certificate, as matter of evidence, is no better than that of any other individual.

Accordingly, where a deposition was taken in the city of Baltimore, and there was appended to the caption what purported to be the certificate of the clerk of the county court, in Baltimore county, in the state of Maryland, with the

seal of the court affixed thereto, that the person who signed the caption was a justice of the peace for the state of Maryland, in and for the city of Baltimore, but no evidence was offered of the manner of the appointment or election of justices of the peace in the state of Maryland, nor did it appear that the office of the clerk of the county court was the place where the evidence of their appointment or election is made matter of record, or is required by law to be deposited and kept; and the certificate was offered for the purpose of proving that the person who signed the caption was a justice of the peace; it was *held*, that the certificate furnished no evidence of the fact, in proof of which it was offered.

ASSUMPSIT, for money paid, &c. The writ was dated May 27, 1839. For pleas, the defendant filed the general issue and statute of limitations. The action was brought against the defendant for contribution, and was tried at the August term of the court of common pleas for this county, 1840.

The plaintiff proved that he, with the defendant and others, signed a note, dated July 9th, 1830, for $300, payable on demand, with interest annually, running to Calvin Benton, or order—that on the 29th day of July, 1836, an action was commenced on said note, by Francis Russell, the holder, against the signers thereof, and that the writ was served on the plaintiff and defendant, and two other signers—that the general issue and statute of limitations were pleaded by the defendants in that suit, and the jury returned a verdict, charging Boardman, and discharging the other signers of the note, upon whom the writ was served—that a judgment was rendered against Boardman in said suit, in December, 1837, for $386·29 damages, and $35·48 costs, and that on the 12th of January, 1838, the plaintiff (Boardman) paid the said sums to John Taylor, a deputy sheriff, who held in his hands the execution issued on said judgment.

The court instructed the jury that the plaintiff was entitled to recover contribution for the $35·48 costs paid by him.

The court also instructed the jury, that notwithstanding Paige, the defendant, was discharged from all liability to the holder of the note, as before mentioned, yet, under the circumstances aforesaid, the plaintiff had a right to call on him for contribution.

Boardman *v.* Paige.

Two of the co-signers of the note before mentioned having removed from the state a short time previous to the payment of said execution by the plaintiff, the court instructed the jury that their removal from the state was to be considered as having the same effect as if they had been proved insolvent, and that the plaintiff was not obliged to pursue his remedy against such co-signers.

In the course of the trial the plaintiff offered the deposition of Charles Gilman, of Baltimore, in Maryland. There was annexed to the caption a certificate that the person signing the caption was one of the justices of the peace for the state of Maryland, in and for the city of Baltimore. The certificate purported to be signed by the clerk of the county court in Baltimore county, and stated that the seal of the court was thereto affixed, and there appeared to have been some impression made upon the paper of the certificate.

No evidence was offered as to the manner of the election or appointment of justices of the peace in Maryland.

To the admission of the deposition, the defendant's counsel objected—but it was admitted.

To the ruling of the court, in the admission of the said deposition, and to the instructions of the court to the jury, on the points above mentioned, the defendant's counsel excepted.

And it was thereupon ordered that the foregoing case, and the questions arising thereon, be reserved, and referred to the determination of this court.

*G. Y. Sawyer,* for the plaintiff.

*C. G. Atherton, & Farley,* for the defendant.

Woods, J.   The first question that is presented by the case, is one of contribution among joint promisers.

The result of the authorities upon this subject would seem to be, that where joint promisers or co-sureties have received

equal benefits, or been relieved from common burthens, each shall recover over against the other, contribution for the excess paid by him beyond his due proportion or equal share. *Fletcher* vs. *Grover, ante* 368, *and authorities there cited.*

Upon the rule of law there stated, so far as the instructions of the court to the jury recognized the right of the plaintiff to contribution for the costs of the judgment against the plaintiff, the same are not sustained. The costs were never a burthen common to the plaintiff and defendant. No judgment was recovered against the defendant for the costs, but only against the plaintiff alone. Nor does it appear that the defendant was ever in any manner under liability therefor to the judgment creditor. By the payment of the costs, then, the defendant clearly was not relieved from any burthen common to the plaintiff and defendant; and it not appearing that he had expressly assumed to pay any portion thereof to the plaintiff, we can discover no principle, either of law or equity, entitling the plaintiff to contribution, in respect of the costs in question.

But the damages of the judgment recovered against the plaintiff stand upon entirely different grounds; and the instructions to the jury, that the plaintiff was entitled to contribution from the defendant, on account of the sum which he was compelled to pay in discharge of the damages, were correct.

The plaintiff and defendant, together with others, signed the note which was the foundation of the judgment, as joint promisers. The contrary not appearing, it is to be presumed that each derived equal benefits from the contract and the consideration on which it was founded; and it is entirely clear, that both were originally equally bound in equity to pay the note.

Had the liability of the defendant to the holder of the note continued at the time of the payment of the judgment by the plaintiff, no doubt would exist of his liability for contribution, to the extent of his fair proportion. 3 *N. H. Rep.* 270, *Odlin* vs. *Greenleaf;* 10 *Ditto* 489, *Peaslee* vs. *Breed.*

Boardman *v.* Paige.

But the want of direct liability to the holder for the payment of the note, at the time of the payment, is made the ground of defence in this branch of the case. It is contended that the defendant, by reason of his discharge from direct liability to the holder of the note, was also discharged from liability to the plaintiff for contribution. Is the latter a legal sequence of the former?

No question is made of the continuing liability of the plaintiff to the holder of the note, and of the propriety of the judgment against him. It is not pretended that the plaintiff assumed any other than his original liability, or made any new contract, upon which the judgment was founded. The payment by him was not voluntary, but compulsory; by force of the judgment and execution.

The alleged discharge of the defendant's liability for contribution, is not claimed as the result of any act, or agreement of the plaintiff, but simply as resulting from the fact of the defendant's discharge from direct liability to the holder of the note.

By what means that direct liability was discharged, does not distinctly appear by the case.

It must have been, as would seem probable from the facts reported in the case, either the result of the operation of the statute of limitations, or of some covenant, or other agreement between the holder of the note and the defendant, in its terms, scope and effect, personal to the defendant, and operating not as a technical release or discharge of the contract; for if the discharge from the direct liability to the action of the holder of the note had been the consequence of a release or other discharge of the defendant, releasing and discharging the contract itself, then no judgment could properly have been obtained against the plaintiff. Whatever might have been the nature of the defence set up by the defendant, and which prevailed as against the holder of the note, it is apparent it was not of a character to release the plaintiff from his liability. And we think it was immaterial

what might have been the defendant's ground of defence, since it did not avail the plaintiff also ; whether it might have rested upon the contract of the payee, or upon the statute of limitations.

The case of the *Catskill Bank* vs. *Messenger*, 9 *Cowen* 39, was assumpsit upon a promissory note, in which the defence relied upon was, that the plaintiff had, before the suit was brought, upon certain conditions, by an agreement in writing with one Reynolds, a co-signer of the note, contracted not to sue him upon the note. Mr. Ch. Jus. Savage, who pronounced the judgment of the court, to the effect that the parties to the action were not discharged, says, "No injury is done to the defendants. If this is a case in which contribution should be made, the agreement in question cannot defeat it. It is not in the power of the creditor to alter the law between joint debtors. If the bank chooses to give the whole debt to one of the defendants, that is no concern of the defendants who are arrested, nor does it change the liability of the favored debtor."

In *Durell* vs. *Wendell*, 8 *N. H. Rep.* 360, in which the question was made, whether a covenant not to sue one of two or more joint and several promisers, who were principals on a note, would operate as a release to discharge the other promisers, Mr. Justice Upham, in delivering the opinion of the court, remarks : "Have the other promisers any cause of complaint with this arrangement? Would they be deprived of any remedy against their co-promiser, or any right of contribution from him, if compelled to pay more than an equal proportion of the debt? It is apparent that the other promisers would be likely to be prejudiced in neither of these particulars."

Lord Eldon, Chief Justice, in *English* vs. *Darley*, 2 *B. & P.* 62, remarks, "We all remember the case where Mr. Richard Burke being co-surety for an annuity, the grantee gave time to the principal, and yet argued that Mr. Burke was not relieved, though the principal was ; but it was answered that the grantee could make no demand upon the co-

surety, because he must, by so doing, enforce a payment from the principal, contrary to the agreement." The clear principle, upon which the answer was deemed valid, plainly was, that the contract of the grantee with the principal could not affect the liability of the principal to the surety, unless it was of a character to affect the contract between the grantee and surety also, and to relieve the surety as well as the principal. If it did not directly affect and discharge the surety, it could not affect his right to contribution.

*Sibley* vs. *McAllaster*, (8 *N. H. Rep.* 389,) was an action brought to recover money paid on a note, signed by Sibley as surety of the defendant's intestate. The creditors, or holders of the note, neglected to present the note to the executor, for more than two years. It was held, that, by such neglect, even if continued so long as that all remedy against the principal was barred, the surety would not be discharged: but would remain liable, and might pay, and recover of the estate the sum paid. In the opinion of the court in *Peaslee, Adm'r,* vs. *Breed,* 10 *N. H. Rep.* 489, Ch. J. Parker remarked, in reference to the case of *Sibley* vs. *McAllaster,* that the principal question in that case was, whether the surety was not discharged; and that no doubt was entertained, that, if the surety remained liable, he had the right to recover, notwithstanding a direct remedy, by the creditor of the estate, was barred by the provisions of the statute, that no action should be sustained against the executor or administrator, unless the claim was exhibited within two years from the original grant of administration. The action of *Peaslee, Adm'r,* vs. *Breed,* already cited, was brought to recover contribution, on account of a sum of money paid by Peaslee, in part discharge of a note, signed by his intestate and the defendant, to one Olney Thompson; and it appeared, that at the time when the plaintiff made the payment the defendant was discharged from his direct liability to Thompson by the statute of limitations. It was there further said, in the opinion in that case, that it was

immaterial whether the intestate's liability was continued by evidence of partial payments, made at a time when he was liable to pay the whole, and accompanied with no disclaimer of further liability, or whether it was continued by a judgment ; that the administrator brought that action upon an entire different promise of the defendant, from that which he made to Thompson ; one arising by operation of law from the same transaction, but not a promise between the same parties ; and there was nothing to bar the action on this promise.

The rule of law, then, would seem to be, that, when one of two or more co-promisers, without assuming any new ground of liability, still continues liable upon the original contract to the promisee, and is lawfully compelled, by virtue of such contract, to pay the debt, or discharge the original liability of all the co-promisers to the promisee, in such case, the equitable liability of the other co-promisers, for contribution of their fair proportion, will still remain, notwithstanding any contract of the promisee for the relief of such other co-promisers, and notwithstanding they may be discharged by the operation of the statute of limitations from that liability to the promisee.

And, generally, if the contract, or other ground of relief relied upon, be not of a character to operate as a discharge of the debt or liability to the promisee, as to all the promisers, it will not avail, we apprehend, as a discharge of the liability for contribution, among the co-promisers, existing in favor of such as may be compelled to pay or discharge such debt, or other liability, against the others. An exception to this general rule may be found to exist, in the provisions of special statutes, as in the case of acts of bankruptcy or insolvency, in which, at the same time that it is provided that the direct liability of the bankrupt, or insolvent, to the promisee shall be discharged, provision is made for the limitation of the remedy of sureties or co-promisers, to the assets in the hands of the assignees.

The implied promise of each co-promiser to any other co-promiser, is, that he will contribute his fair proportion of whatever sum that other shall be compelled to pay, and may lawfully pay by reason of the original undertaking. The undertaking of co-promisers, then, is a liability, or undertaking, which in its very nature continues so long as the original liability continues on the part of any one, for the payment of the debt ; for so long as the liability of any one continues, he may be compelled to pay, and when he pays he is entitled to recover contribution. We would further remark, that we are now considering a rule of law, resting upon an equitable foundation. Contribution, indeed, is said to be bottomed on a fixed principle of justice, and not upon contract. *Deering* vs. *The Earl of Winchelsea,* 2 *Bos. & Pull.* 270. And wherever equity goes, there the rule of law goes. How does the defendant's view of the case under consideration, consist with the principles of equity and justice ? The defendant was under equitable as well as legal obligation originally, to pay to the plaintiff his fair proportion of what the plaintiff might have to pay, to discharge the common liability. This view is not contested. The ground of defence relied upon, as I have shown, is not the result of any act, or contract of the plaintiff, discharging him from his obligation ; neither has it operated to discharge or relieve the plaintiff from any part of the burthen which was originally assumed, and which was common to all the signers of the note. Instead of that, the defence was made to the action of the holder of the note, and the result of that action, which is made the ground of defence here, left the plaintiff burthened with the payment of the whole debt to the holder of the note. It is not pretended that the defendant has ever paid or in any way discharged the original debt, or any part of it. Upon what principle of equity, or of reason, then, shall it be said, that the defendant, who has, by the course he has pursued as between himself and the holder of the note, and without assent on the part of the plaintiff, thrown the whole burthen of the common

debt upon the plaintiff, has in good faith discharged his liability and promise of contribution to the plaintiff, or is fairly, and equitably, discharged therefrom?

The answer is plain, that no such principle can be found to exist.

We are all clearly of opinion, therefore, that the plaintiff is, upon well settled principles of law, entitled to contribution in respect of the damages paid.

Two of the co-signers had removed from the state before the payment was made by the plaintiff. The court instructed the jury, that their removal was to be considered as having the same effect as if they had been proved insolvent, and that the plaintiff was not obliged to pursue his remedy against such co-signers.

And we are of opinion that the instructions on this point were correct.

We think the plaintiff was not obliged to pursue his remedy in a foreign jurisdiction, but might well bring his action against the defendant in the manner he has done, and thereby throw upon the defendant the equal burthen of going to the foreign jurisdiction, with the plaintiff, to seek contribution of the remaining co-signers, or of sustaining the loss without such effort, as he might choose. It would impose no greater hardship upon the defendant than the plaintiff, to go abroad to seek contribution.

Having derived equal benefits with the plaintiff from the contract presumptively, nothing appearing to the contrary, the plaintiff and defendant were equally bound to bear its burthens, as before stated. But if the plaintiff were bound to seek his remedy in a foreign jurisdiction, at any and every expense that might attend it, or alone to sustain the loss, by payment without right of contribution, as against the defendant, beyond a fourth part of the sum paid, it is apparent the burthen would not fall equally on each. For these reasons, we think the instructions of the court on this branch of the case were entirely correct.

Boardman *v.* Paige.

A farther question arises upon the case, touching the admissibility of the deposition of Charles Gilman.

Its admissibility was objected to, on the ground that it did not appear by competent proof that the person before whom it was taken in Maryland was a justice of the peace.

The evidence offered of that fact was what purported to be the certificate of the clerk of the county court in Baltimore county, with the seal of the court affixed thereto. The manner of the appointment or election of justices of the peace in Maryland was not shown, nor did it appear that the office of the clerk of the court is the place where the evidence of the appointment or election is made matter of record, or is required by law to be deposited and kept.

The clerk of the court is competent to certify copies of the records properly made in his own office, and of all original papers and documents, of which he has the legal custody. He is a certifying officer to that extent, but not beyond it. His certificate of matters not required to be recorded in his office, and not legally proper to be recorded there, or of which he has not the legal custody and keeping, is no better than the certificate of any other individual. *United States* vs. *Percheman*, 7 *Peters* 51; *Oakes* vs. *Hill*, 14 *Pick.* 442; *United States* vs. *Johns*, 4 *Dallas' Rep.* 412; *Dunlap* vs. *Waldo*, 6 *N. H. Rep.* 450.

It not appearing, therefore, that the appointment or election of justices of the peace, or any evidence thereof, is required by the laws of Maryland, where the supposed justice resided, to be recorded or kept, in the office of the clerk of the county court, clearly his certificate was not competent evidence, to prove the fact of such appointment or election.

We think, therefore, that the exception to the admission of the deposition in question was well taken.

For the reason, therefore, of error in the instructions of the court to the jury, in reference to the right of the plaintiff to

contribution, on account of the payment of the costs of the judgment of Russell against the plaintiff, and in the ruling in reference to the admissibility of the deposition of Gilman, the verdict must be set aside, and the action transferred to the court of common pleas for trial.

*New trial granted.*