## CURRIER v. FELLOWS.

The plaintiff, in order to assist one Pingree in his business, gave his own notes for hides to dealers in Boston, for Pingree's benefit, which Pingree sold to the defendant. The bills were sometimes made out in the plaintiff's name; but Pingree told the defendant that the plaintiff had no interest in the business, and allowed his name to be used for Pingree's accommodation. On the 3d day of May, 1848, Pingree told the plaintiff that he should not be able to get a note from the defendant, for stock, large enough to meet his payments. The plaintiff said that as he was selling stock to the defendant, he ought to assist in making an accommodation note. Pingree then went to the defendant, and he made a note, signed by Pingree and payable to the plaintiff, and Pingree indorsed it, " waiving demand and notice," and leaving a space for the plaintiff's name. The plaintiff indorsed the note, and got it discounted at the Derry Bank, and paid the money to Pingree. Pingree afterwards made two mortgages to the plaintiff, to secure this note and other debts, one upon real and the other upon personal estate, which latter was sold, and the avails received by Pingree. In 1850, Pingree released his interest in the real estate to the plaintiff. The property mortgaged was not sufficient to pay all the debts. The plaintiff, having been compelled to pay the note to the Derry Bank, brought an action against the defendant. *Held*, that the defendant was liable as an original promiser, and not as an indorser; that the note was an accommodation note for the benefit of Pingree; that the object of the parties was to become sureties for Pingree, and that the plaintiff was entitled to recover of the defendant one half of the sum he had paid, deducting whatever sum he had received or could realize from the mortgaged property.

Where joint promisers or co-sureties have received equal benefits, or have been relieved from common burthens, one cannot recover from the other more than the excess he has paid beyond his share.

A surety is entitled to the benefit of any security held by his co-surety.

ASSUMPSIT, upon a promissory note, dated May 3d, 1848, for the sum of $500, signed by Samuel W. Pingree, and payable to David Currier, or order, in six months after date, and indorsed by the parties to this suit. The writ contains counts for money paid and money had and received.

Prior to 1846, Pingree was engaged in carrying on business as a tanner and currier, at Auburn, in this State, in his own name. But in the early part of that year, in order to enable Pingree to do more business than he could upon his own credit, Currier gave his own notes, in several instances, to

hide dealers in Boston for hides, and, in some cases, to others for money, and also gave a written guarantee to one firm in Boston to the amount of $500, to the sole benefit of Pingree. During this time and until after the note in suit was given, Pingree sold most of his leather, when manufactured, to the defendant, Fellows,.and received in payment notes, which he sold, and with the cash thus obtained, paid and discharged the notes and liabilities of Currier for him, so far as he had sufficient means.

For awhile Pingree signed his own name to the bills of leather to Fellows, but afterwards, with Currier's assent, he made them out in Currier's name; but his accounts with others were kept in his own name, and he informed Fellows that Currier had no interest in the business, and only allowed his name and credit to be used in it for Pingree's accommodation, and before the note in suit was made he again returned to his former practice of giving the bills in his own name, and his name was again entered upon Fellows' books, instead of Currier's.

In Boston, however, the hides were still bought on Currier's credit, and his notes given for them, until the 15th of November, 1848. Pingree, in no instance, signed Currier's name to notes, and did not give bills in his name, except to Fellows. On the day the note of May 3d, 1848, was executed, Pingree informed Currier that notes were coming due, and he should not be able to get a note from Fellows for stock large enough to meet them. ·Currier said as he was selling stock to Fellows, he ought to assist in making up an accommodation note, and he himself had no objection to assisting Pingree, if Fellows would sign a note of that kind. Pingree then went to Fellows, and he made out the note aforesaid, and upon the back of it wrote the words "waiving demand and notice," and leaving a space which he intended for Currier's signature, signed his own name below. Pingree carried the note to Currier, and he wrote his signature above that of Fellows, and then discounted the note at the

Derry Bank, and paid the money to Pingree, who applied the greater part of it to pay notes given by Currier, in Boston, as before stated, and used the rest in the course of his business. It was proved (if competent to be proved, against the plaintiff's objection) that when Pingree went to Fellows about the note, he promised him that he would pay the note at maturity, out of the money which he should obtain upon notes that Fellows might afterwards give for stock, and that Fellows said he left room for Currier's signature. Pingree did not inform Currier of the conversation with Fellows.

Between May 19th and December 20th, 1848, Fellows bought of Pingree, from time to time, stock to the amount of $1,849,61, and gave him notes therefor, and Pingree obtained money upon them; all of which was applied to pay debts for which Currier had become liable in the manner before stated, and to buy new stock for the tannery. At one time Pingree told Currier that he had a small balance left of the money raised upon the notes given by Fellows, and inquired if he should pay it upon the note now in suit, and Currier replied that he did not know as it would " make any odds " whether the money were taken for that, or otherwise used in the tanning business.

On the 13th day of September, 1848, Pingree gave Currier two mortgages, to secure the debt in question and other debts, one upon real estate, subject to prior mortgages, and the other upon stock in the tannery.

The personal property was sold by Pingree, and the avails used in the course of his business. Currier never took possession of this property, or in any way interfered with it. But in respect to the real estate, Pingree afterwards, on the 18th day of May, 1850, quitclaimed all his interest in it to Currier and the prior mortgagees. The property mortgaged was not sufficient to pay all the debts. If the question of its value is found to be material in this case, it is to be decided by a jury, unless agreed upon by the parties. The

note in controversy was collected by the bank of Currier. The foregoing facts having been proved, the parties agree that such judgment should be entered as the court should determine.

*French*, for the plaintiff.

I. The plaintiff is entitled to recover the full amount of the note, the defendant being co-promiser with Pingree originally. *Martin* v. *Boyd*, 11 N. H. Rep. 385 ; *Austin* v. *Boyd*, 24 Pick. 67.

II. Fellows' declaration that he left room for Currier's signature, is not competent to show an original agreement to be co-sureties for Pingree, as the plaintiff was not present, and did not know of it, and there is no other evidence to restrict the defendant's liability.

There is no evidence tending to prove that the plaintiff had any interest in Pingree's business, except to assist him as a friend, or that Currier had any control of Pingree's funds.

*D. & D. J. Clark*, for the defendant.

GILCHRIST, C. J. Before the year, 1846, Pingree, being in business as a tanner, Currier used to aid him, by giving his own notes for him. Pingree sold his leather to Fellows, and with the proceeds paid Currier's liabilities for him.

For a while he made out his bills to Fellows in his own name, and then, with Currier's assent, he made them out in Currier's name, but told Fellows that Currier had no interest in them. He then again made the bills in his own name; but in Boston hides were bought in Currier's name, and Currier's notes given for them until November, 1848.

Pingree, wishing to raise money, Currier said he would aid him in making an accommodation note, if Fellows would sign a note of that kind. Fellows drew up a note to Currier for $500, and Pingree signed it. Fellows indorsed

it, "waiving demand and notice." Currier then wrote his name above that of Fellows, got the note discounted at the Derry Bank, and paid the money to Pingree, who applied most of it to pay notes, given by Currier, in Boston, for his benefit, and used the rest of it.

Where the defendant placed his name on the back of a note, at the time it was made, payable to the plaintiffs, but not endorsed by them, it was held that he was liable as an original promiser and not as an indorser. *Martin* v. *Boyd*, 11 N. H. Rep. 385. In that case there was no evidence offered but the signature on the back of the note, to show the intent of the parties. Here the intent is obvious. The note was an accommodation note for the benefit of Pingree. This is clearly apparent from the case, and all the parties must have so understood it. The object of Currier and Fellows was to become sureties for Pingree in some form, and thus aid him to raise money.

The same point was decided in *Austin* v. *Boyd*, 24 Pick. 67. There *Morton*, J. says that "the apparent effect of putting the plaintiff's name over the defendant's, would be to change the character of the contract, to convert an original promiser into a second indorser, and to discharge the defendant from all liability to the plaintiff." That was not an accommodation note, but for a debt due to the plaintiff.

The plaintiff has paid the note to the bank. But he had the benefit of most of the money, by Pingree's applying it on debts for which Currier was liable. He and Fellows were, in fact, joint sureties for Pingree, and he should recover of the defendant one half of the sum he has paid.

But the plaintiff had security on certain property, by way of mortgage. His co-surety is entitled to an equal benefit in that with him. If he has suffered Pingree to dispose of it, still he should account for it to the co-surety, and also for the value of the rest of it. From the sum the plaintiff is entitled to recover, there should be deducted whatever sum

he has received, or could realize from the mortgaged property.

A surety is entitled to the benefit of any security which a co-surety has. *Low* v. *Smart*, 5 N. H. Rep. 353.

Where joint promisers or co-sureties have received equal benefits, or have been relieved from common burthens, no one can recover of another man more than the excess he has paid beyond his share. *Fletcher* v. *Grover*, 11 N. H. Rep. 368; *Boardman* v. *Paige*, 11 N. H. Rep. 431.

With the limitation above mentioned, there should, there-fore, be

*Judgment for the plaintiff.*