Aug. 13,
1875. SINCLAIR *v.* REDINGTON.

*Trust—Co-sureties—Principal and surety.*

The plaintiffs and the defendants, all but F., were stockholders in the White Mts. R. R. Corporation. The corporation was indebted to the extent of about $100,000, was insolvent, and the stockholders supposed themselves to be individually liable for its debts. The parties to this suit, and others, being desirous of relieving themselves from their liabilities, formed a plan, the object of which was to procure a discharge of those liabilities on the best terms practicable. In pursuance of this plan they executed bonds, and placed them in the hands of F., the condition of which was substantially as follows: "The condition of this obligation is and it is payable upon the performance of the following conditions and stipulations, viz. : The above bounden John G. Sinclair is to be discharged from all liability on a subscription, signed by him in 1855, for the purpose of purchasing the claims against the White Mountains Railroad, which has not been effected, and then the creditors of the White

Mountains Railroad are to deposit with the said Farr legal and proper discharges or assignments of all their several claims against said corporation and its sureties, to be held by said Farr, in trust for and subject to the order of said creditors, until such an amount as may be necessary to pay the several sums that said creditors may agree to accept for their several claims against said corporation and its sureties has been secured or pledged, to the satisfaction of said trustee, and then to hold said claims so assigned, as aforesaid, for the use and benefit of all those who contribute towards the purchase of the same, for the purpose of compelling those stockholders in said corporation, who do not contribute anything towards making up the sum necessary to purchase said claims, to pay their proportion thereof;—now, whenever the said Farr shall be satisfied that all the claims against said corporation, or as near that as the nature of the case will admit, have been discharged or assigned as aforesaid, and held by him for the purposes aforesaid, and shall have notified us in writing of the same, which notices may be sent to us by mail if not given personally, then we are to pay to said Farr, or to his order, the penal sum named in the foregoing bond, within the time stipulated therein, with interest from the time of such notice—then this obligation shall be void."

The defendant stockholders, having purchased in the outstanding liabilities of the corporation for about $10,000, succeeded in collecting about $30,000 from the corporation, and enough to indemnify them against all their outlays and expenses in the transaction. F., having given the notice mentioned in the foregoing condition, proceeded to put the bonds in suit for the benefit of the defendant stockholders. *Held*, that the relation of co-sureties existed between the plaintiffs and the defendant stockholders ; that the debts, as against the plaintiffs, were discharged, and that the defendant stockholders had no claim against them but for indemnity, which they had already received; that the bonds were not collectible; that the trustee was *functus officio,* and should be enjoined from collecting the bonds.

FROM GRAFTON CIRCUIT COURT.

BILL IN EQUITY, praying for an injunction to restrain the defendants from further prosecuting certain suits at law. The facts appear sufficiently in the opinion.

*Carpenter* and *Bingham & Mitchell,* for the plaintiffs.

*Rands, G. A. Bingham,* and *Farr & Stevens,* for the defendants.

CUSHING, C. J. The defendants in their answer insist that the bill is multifarious ; that there is no equity in it; that upon the bill the

plaintiffs have a remedy at law. They say that Cummings was not a stockholder after April 6, 1855 ; they state the proportionate amount of liability of the said Redington, Rand, Cummings, and Chamberlain ; and they do not deny that they have received from the railroad corporation and others amply sufficient to repay all they have laid out.

The questions arising on the bill and this part of the answer are before the superior court for decision. In this discussion, therefore, the allegations in the bill must be taken to be true, and the matters of fact stated in the answer, so far as above given, must be taken to be true ; and it is in this view that the matter has been examined.

The two plaintiffs Hodgman represent their father, Francis Hodgman ; the two plaintiffs Gile represent their father, Timothy Gile ; and the plaintiff Parker represents his father, Levi Parker. As the rights and liabilities of these representatives are the same as those of their ancestors so far as this case is concerned, I shall use the term *plaintiffs* as embracing these ancestors instead of their representatives.

It appears, then, that the plaintiffs and the defendants and many other persons were, prior to the year 1855, stockholders in the White Mountains Railroad ; that said corporation at that time was owing more than $100,000 ; that said corporation was insolvent ; that the parties to this suit, as stockholders, were understood to be personally liable for the debts of the corporation ; that some or all of the defendants were also liable as sureties ; and that the parties to this suit, as well as other stockholders, were desirous of devising some plan by which they might escape from such liability.

One of the plans suggested was, that the parties and others should subscribe an agreement, binding themselves to pay certain sums proportioned to their stock and their liability, for the purpose of raising funds with which to buy up or otherwise extinguish the indebtedness of the corporation. These defendants, with others, had signed such an agreement, but the plan had not been carried out.

These defendants, then, professing their willingness to pay, on account of their liability as sureties, a much larger sum than the others, proposed another plan, *i. e.*, " that each stockholder should by his writing obligatory bind himself to pay a certain sum in proportion to the amount of his stock in said corporation, or such part thereof as might be required for the purpose, to said John Farr as a trustee, payable upon condition that he be discharged from his liability upon the said subscription of 1855, in case he was one of the subscribers thereof, and that substantially all the claims against said corporation, together with proper discharges thereof, be deposited with said Farr, and that a sufficient amount be secured by means of said bonds, or be otherwise obtained to pay the full amount required by all the owners of said claims for the discharge thereof, and not otherwise ;　＊　＊　＊　that a large number of said stockholders accepted said proposed plan and united in carrying the same into effect, and among them said John G. Sinclair, who, in pursuance thereof, on the 5th day of June, 1857, executed a bond in the sum of seventy-eight dollars to said John Farr, payable upon

conditions expressed in the words following, that is to say,—'The condition of this obligation is and it is payable upon the performance of the following conditions and stipulations, viz. : The above bounden John G. Sinclair is to be discharged from all liability on a subscription, signed by him in 1855, for the purpose of purchasing the claims against the White Mountains Railroad, which has not been effected, and then the creditors of the said White Mountains Railroad are to deposit with the said Farr legal and proper discharges or assignments of all their several claims against said corporation and its sureties, to be held by said Farr, in trust for and subject to the order of said creditors, until such an amount as may be necessary to pay the several sums that said creditors may agree to accept for their several claims against said corporation and its sureties has been secured or pledged, to the satisfaction of said trustee, and then to hold said claims so assigned, as aforesaid, for the use and benefit of all those who contribute towards the purchase of the same, for the purpose of compelling those stockholders in said corporation, who do not contribute anything towards making up the sum necessary to purchase said claims, to pay their proportion thereof;—now, whenever the said Farr shall be satisfied that all the claims against said corporation, or as near that as the nature of the case will admit, have been assigned or discharged as aforesaid, and held by him for the purposes aforesaid, and shall have notified us in writing of the same, which notice may be sent to us by mail if not given personally, then we are to pay to said Farr, or to his order, the penal sum named in the foregoing bond, within the time stipulated therein, with interest from the time of such notice—then this obligation shall be void.'" The other plaintiffs executed similar bonds, and deposited them with the said Farr. The plaintiffs claim that by the true construction of the condition of these bonds they were only to pay such sums as might be necessary in order to raise a sufficient sum to purchase or otherwise to extinguish the debts of the corporation on which they were liable.

It further appears that the defendants, instead of proceeding to make this arrangement and assisting the said Farr so to do, purchased, on their own account, for a sum not exceeding the sum of $10,000, substantially, all the outstanding indebtedness of the corporation, taking assignments either to some one of themselves, or to the firm of H. C. Redington & Co., of which firm the defendant Redington was a member; that they afterwards received out of the funds of the said corporation the sum of $30,000, to be applied towards the payment of said claims; and that they have received from other sources a sum not less than $10,000, to be applied in the same way.

It further. appeared, that the said Farr had given the notice mentioned in the condition of said bonds, and had commenced suits upon them against these plaintiffs, which suits are now pending.

The plaintiffs, on these facts, prayed that the said Farr should be restrained from further prosecuting his said actions, and for such other relief as might be just.

The defendants, having filed their answers, in which they admit or deny the allegations of the bill and raise sundry issues of fact, a case was reserved for the opinion of the court, the defendants taking the position that the bill is multifarious, and cannot be maintained by these plaintiffs jointly, and that the plaintiffs have no equity, *i. e.*, that any defence they may have on said bonds is available at law.

It appears from the bill, that the parties were engaged in a common undertaking. Although the defendants in the suits at law, who are here as representatives of their deceased ancestors, may have some other grounds of defence, still, so far as the liabilities of their ancestors are concerned, they stand upon precisely the same ground, and have a common defence.

The bill is probably open to the objection, that it should be alleged to be brought, also, for the benefit of all other parties, similarly situated, who may think proper to come in and avail themselves of the benefits of the suit, but that they are too numerous to be made parties at this time. But this objection can easily be obviated by an amendment of the bill. It seems sufficiently apparent that the defendant Farr is a trustee, even although the word "trustee" does not appear in the bond. These parties were all engaged in a common undertaking, in which it does not appear that Farr had any pecuniary interest. That undertaking was to negotiate for the purchase or discharge of the outstanding liabilities of the White Mts. Railroad Co., and these parties as stockholders. The bonds of these plaintiffs, and others, were entrusted to him for a specific purpose, and that purpose is unmistakable. It was to hold these bonds in trust for the makers of them, and with them, or the avails of them, to purchase or procure the discharge of those liabilities. One of the purposes expressly declared was, to compel contribution from others who should be equally liable and who did not pay. There seems no doubt that, if these bonds had been collected and the avails applied in discharge of any liabilities, such contribution would be for the benefit of the obligors of these bonds; and the whole scope and tenor of the condition of the bonds show that the object and purpose of the trust was to raise money for the purpose of extinguishing these liabilities, and to hold the balance for the benefit of the parties whose contributions raised the fund.

It is to enforce the performance of this trust, and to restrain an alleged breach of it, that this bill is brought.

The defendants—Redington, Rand, and Chamberlain—were co-debtors with the plaintiffs, and their position and liabilities were the same as those of other co-debtors: they really stood as co-sureties for the White Mts. Railroad.

Now, in buying up the claims and demands against the White Mts. Railroad, they either were or were not acting as the agents of the plaintiffs, and others similarly situated with the plaintiffs; but, in either event, all they could claim of them would be indemnity. Their rights and liabilities were those of so-sureties, and nothing else. If they paid the debts, they would have a right to claim of the White Mts. Railroad

what they paid, and nothing more : they would have the right to claim of their co-sureties contribution to the same extent, and nothing more. By no possible arrangement could they change this result. It is true, that, if a creditor has a suit pending against his principal debtor, or even against his principal debtor and his sureties, the sureties may pay the debt and take an assignment of the suit, which will be permitted to go on in the name of the creditor for their benefit ; and perhaps other cases are conceivable where an assignment might be taken in some form of the debt and securities for the protection of their rights as sureties. But in that case they could not claim from the principal debtor anything more than their indemnity, and still less could they claim from their co-sureties anything but contributions of their equitable shares. The idea that they could, by any process of assignment, speculate on their co-sureties, is too monstrous to be tolerated for a moment. These views, it is believed, are too elementary and too much among the commonest learning on the subject to leave any occasion for the citation of authorities.

Now, for the purposes of the present discussion, it is to be taken as true that such is the state of facts in regard to these debts. That has been substantially conceded in the argument. The debts, which were the subject-matter of this operation, were debts on which the plaintiffs and the defendants and many others were jointly liable, substantially, as co-sureties of the White Mts. Railroad Co. A trust fund was created for the purpose of relieving those who contributed to it from their liability on those debts. The defendant Farr was the trustee, and if at any time he had in his hands any more than enough to satisfy that liability, he held it in trust for those contributors. Now, suppose the White Mts. Railroad Co., the principal debtor, had discharged or taken assignments in the name of third parties, perhaps, and deposited them with the trustee : could he have collected the amount of those bonds and paid it to the corporation ? Clearly not : and there is really no difference between this case and that. After the defendants had bought up those liabilities, and recovered their indemnity of the White Mts. Railroad, the liabilities of these defendants were wholly extinguished. The trustee was *functus officio*. The trust was extinguished, and the bonds were no longer collectible. The attempt to collect them by the trustee appears to me, therefore, to be inadmissible. It was undoubtedly a very honest mistake on his part, but still a mistake.

The result is, that the defendant Farr must be perpetually enjoined from collecting the bonds, and the other defendants must be restrained from enforcing any claim on this account against the plaintiffs, unless such further proceedings shall be had as shall change this result.

It being understood that the case was sent to the law term for the purpose, merely, of determining the questions raised, the case must be discharged.

SMITH, J. If these plaintiffs were liable at all for the debts of the defendant corporation, it was by virtue of the statute making stock-

holders, under certain circumstances, individually liable for the debts of the corporation. These parties, then, stand to each other in the relation of co-sureties or co-guarantors for the White Mts. Railroad. The defendants have purchased in, at a large discount, the, claims against the corporation. No one will claim that they can recover of the corporation a larger sum than will completely indemnify them. It follows *a fortiori* that a surety, who has bought up the claim of his principal at a discount, cannot compel his co-surety to contribute more than his just proportion of the sum paid; otherwise the co-surety would stand in a worse position than the principal. *Mason* v. *Lord*, 20 Pick. 447; *Currier* v. *Fellows*, 27 N. H. 366. As those defendants have been more than repaid by the principal debtor, they have, in fact, suffered no loss, and cannot call on their co-sureties for contribution.

LADD, J., concurred.

*Case discharged.*